IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


EDDIE ANGLIN, JR.,
      Petitioner,

vs.                               Case No.: 3:06cv381/RV/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

### REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 6).  Respondent filed an answer and relevant portions of the state court record (Doc. 25).  Petitioner filed a reply (Doc. 35).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record.  Petitioner was indicted  in the Circuit Court for Escambia County, Florida, for first degree murder (*see* Doc. 25 at 1, Ex. F at 101).  Following a jury trial, he was found guilty as charged (*see* Doc. 25, Exs. B, M).  On October 2, 2003, Petitioner was sentenced

---

[1]Walter McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

to life imprisonment without parole, with credit for pre-sentence jail time of 283 days (Doc. 25, Ex. H at 39–44).  Petitioner appealed the judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA).  Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Doc. 25, Ex. C).  Although Petitioner was provided an opportunity to file a pro se brief, he declined to do so (*see id.*).  On November 30, 2004, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing December 28, 2004 (Doc. 25, Exs. D, E).  <u>Anglin v. State</u>, 888 So. 2d 625 (Fla. 1st DCA Nov. 30, 2004) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On August 21, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 25, Ex. G).  The trial court denied the motion in a written opinion rendered on November 15, 2005 (Doc. 25, Ex. H).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on March 28, 2006, with the mandate issuing May 26, 2006 (Doc. 25, Exs. K, L).  <u>Anglin v. State</u>, 928 So. 2d 338 (Fla. 1st DCA Mar. 28, 2006) (Table).

Petitioner filed the instant habeas action on August 23, 2006 (*see* Doc. 1, Certificate of Service), and subsequently filed an amended petition (Doc. 6).  Respondent concedes that the petition is timely (Doc. 25 at 4).

## II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

        (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous

application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.


III.    PETITIONER'S CLAIMS

A.   Ground I:  Counsel was ineffective when empanelling [sic] jurors, selected a juror who was bias [sic] and prejudiced toward the nature of the crime, in contravention fo the United States Constitution Amendments 6 and 14, and Florida Constitution Article I, and Section 16.

(Doc. 6 at 4).  Petitioner asserts that during jury selection, prospective jurors were asked to indicate whether anyone had a close friend or relative who had been the victim of a homicide, sexual battery, manslaughter, or battery, and Prospective Juror Conley indicated that his sister was the victim of a date rape (*id*.).   Defense counsel asked Mr. Conley if a prosecution occurred, and Mr. Conley responded, "He was prosecuted, but it wouldn't change anything." (*id*.).   Petitioner claims that defense counsel performed deficiently by failing to clarify Mr. Conley's statement by asking him whether he could lay aside any bias or prejudice and render a verdict solely based upon the evidence (*id*.).   Petitioner contends that as a result of counsel's failure, Mr. Conley, who was biased "with regard to the nature of the crime" and thus unable to be fair and impartial, was empaneled.   In Petitioner's response to Respondent's Answer, he expressly states that he is not claiming that Mr. Conley had a preconceived opinion that Petitioner was guilty, rather Mr. Conley was prejudiced with regard to sexual batteries (Doc. 6 at 4–4A; Doc. 35 at 4–5).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 25 at 6).

1.   Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558,

1574-1575, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *See* <u>Michel v. Louisiana</u>, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

<u>Strickland</u>, 466 U.S. at 689.

As to the prejudice prong of the <u>Strickland</u>, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Strickland</u>, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698, 104 S.Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as his third ground for relief in his Rule 3.850 motion (*see* Doc. 25, Ex. G at 14–15).  In the written opinion denying Petitioner's claim, the post-conviction court made the following factual findings:

> A review of the record reveals that Mr. Conley was one of several jurors who responded to an inquiry by defense counsel as to whether anyone had a "close friend or relative who has been the victim of a homicide, a sexual battery, a manslaughter, or a battery."  Several jurors who responded to the question were asked in succession about the nature of their personal experiences, and then asked if they could put that aside and decide the case solely on the evidence.  Mr. Conley indicated that he had a sister who had been involved in "[k]ind of a date rape thing.  And no to all the questions."  When considered in context, Mr. Conley's response of "no to all the questions" and "it wouldn't change anything" was clearly a response indicating that his experience with his sister would not change his ability to listen fairly to the evidence.

(Doc. 25, Ex. H at 30) (footnotes citing to trial transcript omitted).  The state court additionally found that Petitioner presented no facts demonstrating that Mr. Conley was in fact biased in any way (*id.*). The state court's written opinion identified the Strickland standard as applicable to claims of ineffective assistance of counsel (*id.* at 28).  Based upon its application of Strickland to its factual findings, the postconviction court concluded that in the absence of evidence of actual bias on the part of Mr. Conley, defense counsel was not ineffective for failing to question him further or exclude him from the jury (*id.* at 29–30).

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Initially, Petitioner has failed to provide clear and convincing evidence to rebut the state court's factual findings.  The trial transcript confirms that Mr. Conley was one of several jurors who responded affirmatively to an inquiry by defense counsel as to whether anyone had a "close friend or relative who has been the victim of a homicide, a sexual battery, a manslaughter, or a battery" (Doc. 25, Ex. M at 59).  The transcript also confirms that several jurors who responded to the question were asked in succession about the nature of their personal experiences, and then asked if they could put that aside and decide the case solely on the evidence.  The review of the exchanges between the prospective jurors and defense counsel in open court is necessary to provide context for Mr. Conley's responses; therefore, the portion of the transcript including these exchanges will be repeated here:

> MR. STOKES [defense counsel]:      . . . yes, ma'am.  Ms. –
>
> PROSPECTIVE JUROR:      Crook.
> . . . .
> MR. STOKES:      Do you feel that since Mr. Anglin is charged with participating in a sexual battery, that your relationship with your close friend would keep you from being fair in weighing the evidence in this case?
>
> PROSPECTIVE JUROR:      No, I don't think so.
>
> MR. STOKES:      . . . And Ms. Gordon.
>
> PROSPECTIVE JUROR:      A relative, battery.
> . . . .
> MR. STOKES:      All right.  Was it charged as an aggravated battery, do you know?
>
> PROSPECTIVE JUROR:      That I wouldn't know.  I'd have to get more details.  It was out of state.
>
> MR. STOKES:      Was it severe?  You said severe?
>
> PROSPECTIVE JUROR:      Yes, it was severe.
>
> MR. STOKES:      Did that person–was the person who inflicted the battery charged with a crime?
>
> PROSPECTIVE JUROR:      (Nods head affirmatively.)

MR. STOKES:          Do you know what the result was?

PROSPECTIVE JUROR:       They were convicted.

MR. STOKES:          All right.  And were you satisfied with the way the system worked?

PROSPECTIVE JUROR:       Yes.

MR. STOKES:          Thank you, ma'am.  Okay.  Next row.  We've got Ms. Livingston.

PROSPECTIVE JUROR:       Yes.   Twenty  years  ago  my  father  was murdered by a friend of his.  We were not in contact.  We were–my parents were divorced early, so I did not really know him at that point.  It was in Jacksonville and I lived here.  I don't know.  The person who did shoot him was committed–convicted of the crime, but that's really all the details I know of it.  And then I also have a family member that was a victim of date rape.

MR. STOKES:          Okay.  And you understand in this case, that Mr. Anglin is charged with first-degree murder?

PROSPECTIVE JUROR:       Uh-huh.

MR. STOKES:          And you've indicated that your father was the victim of a murder?

PROSPECTIVE JUROR:       Uh-huh.

MR. STOKES:          Do you think should you be chosen to serve on the jury, that you would be able to put out of your mind what happened with your father and just judge the evidence in this case based upon what you hear from the witness stand–

PROSPECTIVE JUROR:       Yes, sir.

MR. STOKES:          –without  relating  back  to  that  incident  with  your father?

PROSPECTIVE JUROR:       Yes, sir.  Like I said, I was not in contact with him and hadn't been in several years.

MR. STOKES:          Okay.  And the same thing about the family member who was the victim of a date rape.

PROSPECTIVE JUROR:        Uh-huh.

MR. STOKES:        Would you be able to put that out of your mind and not relate that to this case?

PROSPECTIVE JUROR:        That–no charges were even filed on that case.

MR. STOKES:        All right.  Thank you, ma'am. . . . We've got Ms. Graff.  Okay.  What–

PROSPECTIVE JUROR:        One of my friends, a sexual battery.

MR. STOKES:        Okay.  Who was the victim?

PROSPECTIVE JUROR:        Who was the victim?  My best friend. . . . .

MR. STOKES:        How long ago was that, Ms. Graff?

PROSPECTIVE JUROR:        Four or five years ago.

MR. STOKES:        Did criminal charges come from that?

PROSPECTIVE JUROR:        (Shakes head negatively.)

MR. STOKES:        No?

PROSPECTIVE JUROR:        (Shakes head negatively.)

MR. STOKES:        Would that affect your ability to be fair in a case where a sexual battery may have been involved?

PROSPECTIVE JUROR:        No.

MR. STOKES:        Okay. . . . And then we've got Ms. White, also.  Okay.

PROSPECTIVE JUROR:        I had an aunt who was murdered back in I think '84, '85.

MR. STOKES:        Your aunt?  Okay.

PROSPECTIVE JUROR:        I had an aunt who was murdered.

MR. STOKES:        Okay.  Anybody else on that row?  On back to the next row.  I've got Mr. Conley.

   PROSPECTIVE JUROR:  Yes.  A sister.  Kind of a date rape thing.  And no to all the questions.

   MR. STOKES:  Okay.  No prosecution or anything?

   PROSPECTIVE JUROR:  I'm sorry.  He was prosecuted, but it wouldn't change anything.

   MR. STOKES:  Okay.  Thank you.

(Doc. 25, Ex. M at 60–65).  Based upon this transcript, the state court's factual determination that, when considered in context, Mr. Conley's response of "no to all the questions" and "it wouldn't change anything" was clearly a response indicating that his experience with his sister would not change his ability to listen fairly to the evidence, was not unreasonable.  Counsel had just asked Ms. Graff if criminal charges had resulted from the sexual battery of her friend and if that would affect her ability to be fair in a case where a sexual battery may have been involved, and Ms. Graff had indicated "no" to both questions.  It was not unreasonable for the state court to determine that Mr. Conley's response of "no to all the questions" was a reference to the questions regarding whether criminal charges were pursued and whether the experience with the close friend or relative would affect his ability to be fair in a case where a sexual battery may have been involved.  Furthermore, it was not unreasonable for the state court to determine that Mr. Conley's response of "it wouldn't change anything" indicated that his experience with his sister would not change his ability to fairly consider the evidence.

  Likewise, Petitioner has failed to provide clear and convincing evidence to rebut the state court's factual finding that there was no evidence that Mr. Conley was in fact biased.  As previously noted, Petitioner specifically concedes he is not claiming that Mr. Conley had a preconceived opinion that Petitioner was guilty, but that Conley was prejudiced "toward the nature of sexual battery," which indicates "reasonable doubt" as to his ability to be fair and impartial (Doc. 35 at 4–5).  Furthermore, there is no evidence in the record of any actual bias on the part of Mr. Conley, or that Mr. Conley expressed any doubt about his ability to be fair.  Petitioner's speculative assertion that there was reasonable doubt about Mr. Conley's ability to fairly consider the evidence is purely speculative and insufficient to rebut the state court's factual finding that there was no evidence that Mr. Conley was in fact biased.

Additionally, the state court's conclusion that defense counsel was not ineffective for failing to further question or exclude Mr. Conley was not unreasonable.  An attorney's actions during voir dire are considered to be matters of trial strategy.  Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).  In Callahan v. Campbell, the Eleventh Circuit succinctly summarized Petitioner's burden of proving that counsel's performance was ineffective:

> When examining a claim of ineffective assistance of counsel, we "must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgement."  Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (citations and internal quotations omitted).  "[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgement."  Id. at 1314 n. 15 (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)).  We "must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of a counsel's performance 'from counsel's perspective at the time.'"  Id. at 1316 (citation omitted).
>
> A habeas petitioner bears the burden of proving counsel's performance was ineffective and that burden is "a heavy one."  Id. at 1314–15 & n.15.  "[P]etitioner must establish that no competent counsel would have taken the action that his counsel did take."  Id. at 1315.

427 F.3d 897, 932–33 (11th Cir. 2005).

In order to establish the prejudice prong, Petitioner must show that, but for defense counsel's failure to strike Mr. Conley or question him further during voir dire, the result of his trial would have been different.  See Strickland, 466 U.S. at 694; Brown v. Jones, 255 F.3d 1273, 1279 (11th Cir. 2001) (citing Strickland, supra).  The Sixth Amendment guarantees the accused a "trial, by an impartial jury . . ." in federal criminal prosecutions.  U.S. Const. amend VI.  Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions.  Duncan v. Louisiana, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Wd. 2d 491 (1968).  As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court."  Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984).  To maintain a claim that a biased juror prejudiced him, a habeas petitioner must show that the juror

was actually biased against him.  *See* <u>Smith v. Phillips</u>, 455 U.S. 209, 215–17, 71 L. Ed. 2d 78 (1981) (due process does not require a new trial in the face of allegations of juror partiality; rather, the remedy is a hearing in which the defendant must prove actual bias).

For several reasons the undersigned concludes that Petitioner has failed to make the required showings of deficient performance or prejudice.  First, to the extent Petitioner suggests that the court should presume that Mr. Conley was biased and would have refused to follow the law, the undersigned rejects the suggestion.  The Eleventh Circuit has stated in numerous cases that jurors are presumed to follow the court's instructions.  *See e.g.*, <u>Ingram v. Zant</u>, 26 F.3d 1047, 1053 (11th Cir. 1994) ("Because we presume that jurors follow such instructions, we must assume that the jury put aside any biases it may have had, applied the legal standards as enunciated in the jury instructions, and based its sentencing decision on the facts introduced at trial and sentencing."); <u>Raulerson v. Wainwright</u>, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").  The presumption that jurors follow the court's instructions to base their verdict on the evidence and the law, and not on prejudice, bias, or sympathy, undermines Petitioner's position that prejudice should be presumed.  *See* <u>Stamper v. Muncie</u>, 944 F.2d 170, 177 (4th Cir. 1991) (holding that petitioner, who alleged ineffective assistance based on counsel's failure to "explore with certain members of the venire the 'reverse-<u>Witherspoon</u>' inquiry," failed "to demonstrate how any shortcoming on trial counsel's part constituted prejudice sufficient to satisfy the second prong of the <u>Strickland</u> test").  In the instant case, the trial judge instructed the jurors that their verdict should be based on the evidence and the law and that there was no room for prejudice, bias, or sympathy (Doc. 25, Ex. M at 360–62).

Second, Petitioner has adduced no evidence other than the transcript of the jury selection proceeding to support his claim that trial counsel had a reasonable basis for striking juror Conley from the jury pool.  Having reviewed the voir dire transcript, the undersigned concludes that Petitioner has not shown that Mr. Conley was actually biased, and there is no basis for finding an implication of bias. Mr. Conley responded to questioning without equivocal or conditional answers, he expressed no doubt about his ability to be fair, and his responses to defense counsel's questions did not raise any doubt as to whether he possessed the requisite state of mind necessary to render an impartial decision.  Therefore, it is likely that even if counsel had moved to strike Mr. Conley for cause, his motion would have been denied, meaning that the court would have held that Mr. Conley

had not shown sufficient bias to merit a strike for cause.  Furthermore, Petitioner's contention that counsel should have used a peremptory challenge against Mr. Conley constitutes an admission of the lack of provable bias, and supports the state court's determination that keeping Mr. Conley was not ineffective.

Third, the record establishes that Petitioner did not express any concern about Mr. Conley when it mattered.  The voir dire transcript shows that Petitioner participated at the bench with counsel during the challenging of jurors (Doc. 25, Ex. M at 70).  After the attorneys exercised their challenges and before they tendered, defense counsel requested permission to consult with Petitioner; he then consulted with him and tendered (*see* Doc. 25, Ex. M at 80–81).  Additionally, the trial court specifically asked Petitioner if he was happy with the people that defense counsel had selected for the jury, and Petitioner affirmatively indicated that he was (*id.* at 83–84).

The state court's conclusion that there was no showing of ineffectiveness on the part of defense counsel was reasonable under these circumstances and is entitled to deference.  Furthermore, Petitioner has failed to show he was prejudiced by counsel's alleged error on voir dire.  Therefore, he is not entitled to relief on this claim.

B.   Ground II:  Counsel was ineffective for not moving to or attemting [sic] to rehabilitate the last prospective black juror, which resulted in leaving the Defendant peerless to the extent that bias and prejudice were an overwhelming fact [sic] to defendant, in contravention of the Untied States Constitution Amendments 6th and 14th, and Article 1, Section 16, Florida Const.

(Doc. 6 at 4A).  Petitioner asserts that during jury selection, the prosecutor used a peremptory challenge to strike Ms. Jenkins, the only black juror remaining in the jury pool (*see id.*).  Defense counsel challenged the strike on the ground that it was race-based (*id.*).  The prosecutor stated that his reason for the strike was Ms. Jenkins' statement that she believed that the race of the victim and the defendant influenced how the State chose to prosecute (*id.*).  The trial court found that the reason for the strike was race neutral (*id.*).  Petitioner contends his counsel should have attempted to "rehabilitate" Ms. Jenkins by asking her if her opinion as to race of the accused and the victim would hamper her ability to participate and render a verdict based solely on the evidence (*id.* at 4A–4B; Doc. 35 at 6).  Petitioner asserts that as a result of counsel's failure to further question Ms. Jenkins, there is a reasonable probability that the result of the proceeding would have been different (Doc. 6 at 4B).

Respondent concedes that Petitioner exhausted this claim in the state courts, with the qualification that Petitioner did not raise on direct appeal a claim that the trial court erred by finding a race-neutral reason for eliminating Ms. Jenkins from the jury pool (Doc. 25 at 6).

> 1.       Clearly Established Supreme Court Law

The two-part Strickland standard which governs claims of ineffective assistance of counsel was set forth *supra*.

> 2.       Federal Review of State Court Decision

Petitioner raised this claim as his fourth ground for relief in his Rule 3.850 motion (*see* Doc. 25, Ex. G at 16–17).  In the written opinion denying Petitioner's claim, the post-conviction court made the following factual findings:

> Counsel challenged the strike of Ms. Jenkins for the record, noting that "[s]he's a black lady.  I have a black client.  I'd like to have a race-neutral reason."  The State responded, "Well, the reason I struck her is because she was one of two jurors who indicated that they believed that the race of the victim and the defendant influenced how the State chooses to prosecute."  The Court then found the State's explanation to be race-neutral and sustained the strike.

(Doc. 25, Ex. H at 31) (footnotes citing to trial transcript omitted).  Additionally, the state court set forth the state law procedure for properly challenging a peremptory strike on racial grounds:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must:   1) make a timely objection on that basis; (2) show that the venireperson is a member of a distinct racial group; and 3) request that the court ask the striking party its reason for the strike.  *See* Johnson v. State, 752 So. 2d 61, 62 (Fla. 2d DCA 2000) (citing Harrison v. Emanuel, 694 So. 2d 759, 760 (Fla. 4th DCA 1997)).  "If these requirement are met, the court must ask the proponent of the strike to explain the reason for the strike.  The burden then shifts to the proponent of the strike to come forward with a race-neutral explanation.  If the explanation is facially race-neutral, and the court believes that the explanation is not a pretext, the strike will be sustained.  The court's focus is not on the reasonableness of the explanation, but rather its genuineness.  Throughout this process the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination."  Id.

(Doc. 25, Ex. H at 31).  The state court concluded that defense counsel followed the appropriate procedure for challenging the strike and properly preserved the issue for direct appeal (*id*. at 30–31). The court further concluded that counsel was not unreasonable for failing to continue to argue the point after the trial court made its ruling (*id*. at 31).  Therefore, the court concluded, defense counsel was not ineffective with regard to the striking of Ms. Jenkins from the jury.

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence.  Furthermore, the factual findings are supported by the transcript of the voir dire (*see* Doc. 25, Ex. M at 75).  Therefore, these findings are presumed correct.  Additionally, "state courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law.  Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Thus, this court must defer to the state court's determination that defense counsel followed the appropriate state law procedure for challenging the peremptory challenge to Ms. Jenkins and properly preserved the issue for direct appeal.

In light of the state court's factual findings, as well as its conclusion that defense counsel followed the proper procedure for challenging the State's peremptory challenge to Ms. Jenkins and properly preserved the issue for direct appeal, the state court's conclusion that counsel did not perform ineffectively was not unreasonable.  Additionally, Petitioner has failed to demonstrate he was prejudiced by counsel's performance.  He asserts that if defense counsel had questioned Ms. Jenkins further by asking her if her opinion as to race of the accused and the victim would hamper her ability to participate and render a verdict based solely on the evidence, there is a reasonable probability that the result of the proceeding would have been different.  This assertion is based solely on speculation as Petitioner has proffered no evidence of how Ms. Jenkins would have responded if counsel had questioned her further.  Furthermore, there is no indication that the trial judge would have denied the strike if defense counsel had further argued the objection.  Therefore, the state court decision denying Petitioner's claim was not an unreasonable application of Strickland.

    C.      Ground III:  Trial counsel was ineffective for failing to object or move for a mistrial when Defendant was left with an all white jury having all jurors of African decent [sic] removed from panel in contravention of the United States Constitution Amendments 6th and 14th and Article I, Section II and 16 of Florida Constitution.

(Doc. 6 at 4B).  Petitioner next claims that his counsel provided ineffective assistance by failing to object to the racial makeup of the jury pool or venire on the ground that it did not represent a fair cross-section of the community, in violation of the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment (*id*. at B1).  He states that of the fifty (50) members of the jury pool, only three (3) were of African descent, which represents six percent (6%) of the pool, and the rest were of European descent (Doc. 35 at 9).  Petitioner states that the population of the City of

Pensacola is nearly thirty-one percent (31%) African American and sixty-five percent (65%) European; therefore, the pool did not reflect a fair cross-section of the community (*id.*).  Petitioner asserts that the racial composition of the jury pool was especially prejudicial in light of the fact that the victim was a white female and he was a black male  (Doc. 6 at B1).  Petitioner asserts that the result of the trial would have been different if counsel had objected to the racial composition of the jury pool (*id.*).

Although Petitioner's amended federal petition appears to include an additional claim that counsel was ineffective for failing to object to the fact that none of the three (3) African American venire members were selected for the panel (*see* Doc. 6 at 4B), he clarifies in his response to Respondent's Answer that he is raising a "sole argument" that counsel was ineffective for failing to object to the makeup of the venire (Doc. 35 at 11).  Therefore, the court will address only the claim that the venire or pool did not reflect a fair cross-section of the community.

Respondent concedes that Petitioner exhausted this claim in the state courts, with the qualification that Petitioner did not raise on direct appeal a claim that the jury pool had been gathered in a biased manner to systematically exclude black individuals (Doc. 25 at 6).

    1.      Clearly Established Supreme Court Law

The two-part <u>Strickland</u> standard which governs claims of ineffective assistance of counsel was set forth *supra*.

    2.      Federal Review of State Court Decision

Petitioner raised this claim as his fourth ground for relief in his Rule 3.850 motion (*see* Doc. 25, Ex. G at 18–19).  The state court's analysis of the claim is fully set forth in its written opinion:

> Defendant challenges the racial composition of the jury pool.  Defendant alleges that his counsel was ineffective for failing to challenge the panel when "all veniremen of African descent were systematically excluded from the jury panel by the state."  It is unclear whether Defendant takes issue with the fact that only three black jurors were in the venire, or whether his complaint is based on the fact that none of the three black jurors in the pool were eventually selected to sit on the jury.
>
> Defendant has failed to demonstrate that he was prejudiced by counsel's failure to object to the composition of the jury panel as he has failed to demonstrate

that a challenge to the venire would have been well-taken. Initially, the Court notes that this issue is procedurally barred because it could have been raised on direct appeal. *See generally*, <u>Spenkelink v. State</u>, 350 So. 2d 85 (Fla. 1977). Secondly, even if the issue were properly before the Court, Defendant's claim is legally insufficient. Defendant had failed to make any attempt at a showing that the venires from which the jurors were drawn systematically excluded distinctive groups in the community. *See* <u>Robinson v. State</u>, 707 So. 2d 688, 698 (Fla. 1998). If Defendant is challenging only the "removal" of the three black jurors, this claim also lacks merit. In its discussion of Defendant's [claim regarding Ms. Jenkins], the Court addressed the removal of Ms. Jenkins, a black female, from the jury, and found no error. However, Defendant does not state that the other black jurors were necessarily removed from the panel by either party, and it appears that, by random selection, they were simply not in the group of jurors that were selected. The record reflects that each of the 50 juror names was placed on an individual card, defense counsel was allowed to "cut the deck," and the Court laid out 12 cards containing the initial panel. Both peremptory and "for cause" strikes were made, replacement jurors were selected from the shuffled deck, and Defendant expressed satisfaction with both the process and the composition of the jury. Defendant has failed to demonstrate a systematic elimination of black jurors, either as to the venire itself or as to the three black jurors in the venire, and has further failed to demonstrate deficient performance on the part of his counsel. Accordingly, he is not entitled to relief on this basis.

(Doc. 25, Ex. H at 32–33) (footnotes citing to trial transcript omitted).

In <u>Taylor v. Louisiana</u>, the Supreme Court recognized that the requirement that juries be chosen from a fair cross-section of the community is fundamental to the jury trial guaranteed by the Sixth Amendment. 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). In <u>Taylor</u>, the Court held that "petit juries must be drawn from a source fairly representative of the community, . . . [thus,] the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community." *Id.*, 419 U.S. at 538. However, the Court clarified that there is no constitutional requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. *Id.* Accordingly, the Court invalidated those sections of Louisiana's constitution and criminal procedure code which precluded women from serving on a jury unless they expressly so requested in writing.

Several years later, in <u>Duren v. Missouri</u>, the Court articulated a three-part standard for establishing a prima facie violation of the Sixth Amendment's fair-cross-section requirement. 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). The proponent must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community;
(2) that the representation of this group in venires from which juries are selected is
not fair and reasonable in relation to the number of such persons in the community;
and (3) that this underrepresentation is due to systematic exclusion of the group in
the jury-selection process.

*Id.* At issue in Duren was a Missouri statute which provided an automatic exemption for any woman that asked not to serve on jury duty. *Id.* In Taylor, the Court had already found that women "are sufficiently numerous and distinct from men," 419 U.S. at 531, therefore, Duren needed to satisfy only the last two prongs of the test. He did this by presenting statistical data which showed that women comprised over fifty percent (50%) of the relevant community but only approximately fifteen percent (15%) of the jury venires, Duren, 439 U.S. at 364–66, and that this large discrepancy "occurred not just occasionally but in every weekly venire for a period of nearly a year." *Id.*, 439 U.S. at 366. The Court concluded that this undisputed trend "manifestly indicates that the cause of the underrepresentation was systematic—that is, inherent in the particular jury-selection process utilized." *Id.*

A nearly identical three-part standard must be satisfied for establishing a prima facie violation of the Equal Protection Clause. *See* Castaneda v. Partida, 430 U.S. 482, 494, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977). First, the defendant must show that the group is one that is a recognizable, distinct group. *Id.*, 430 U.S. at 494. Second, the degree of underrepresentation must be proved with a statistical showing that compares the proportion of the group in the total population to the proportion called to serve as potential jurors, over a significant period of time. *Id.* Finally, the defendant must show that the selection procedure is susceptible of abuse or is not racially neutral, that is, it provides an opportunity for discrimination. *Id.* The Eleventh Circuit has noted that the equal protection analysis and the fair cross-section analysis employ "virtually identical" prima facie case tests. *See* Bowen v. Kemp, 769 F.2d 672, 683 (11th Cir. 1985); *see also* Cunningham v. Zant, 928 F.2d 1006, 1013–14 (11th Cir. 1991).

In the instant case, although Petitioner has certainly satisfied the first prong. In an attempt to satisfy the second prong, Petitioner provides statistics showing the breakdown by race of the population of the City of Pensacola (*see* Doc. 35 at 9–10). However, Petitioner's trial was conducted in the Circuit Court of Escambia County; thus, the relevant population statistics are the racial composition of Escambia County, not the City of Pensacola. Furthermore, Petitioner's trial

was in 2003, but he does not identify the age of the census data he provides.  Finally, Petitioner made no attempt, in the state court or this court, to satisfy the third prong, that is, that the underrepresentation of African Americans was due to systematic exclusion of that group in the jury-selection process or that the selection process provided an opportunity for discrimination. Because Petitioner failed to show that his counsel had a meritorious basis for objecting to the makeup of the venire or the panel on equal protection or fair-cross-section grounds, the state court decision denying his ineffective assistance of counsel claim was not an unreasonable application of Strickland.  *See* Thomas v. Newsome, 821 F.2d 1550, 1555 (11th Cir. 1987) (where habeas petitioner did not have meritorious Fourth Amendment challenge to arrest, he could not meet Strickland standard to prevail on claim that counsel was ineffective for failing to challenge arrest).

 D.     Ground IV: Court improperly charged the jury on first degree premeditated murder, misleading the jury which created a fundamental error, violating due process rights by the U.S.C.A. 14th.

(Doc. 6 at B1).  As his final claim, Petitioner states that the trial court erroneously instructed the jury on the meaning of premeditated murder (*id*. at B2).  He states that the court instructed the jury, "Killing with premeditation is killing without consciously deciding to do so," which was an erroneous statement of the law (*id*.).

 Respondent contends that Petitioner should have raised this claim on direct appeal but did not; therefore, he should not be permitted to raise it in this habeas action (Doc. 25 at 15). Additionally, Respondent contends that despite Petitioner's characterization of his claim as a federal due process issue, the issue is purely a state law claim because the definition of premeditated murder is a "quintessential issue of state law"; therefore, the issue is not cognizable in federal habeas (*id*. at 16–17).  Finally, Respondent argues that the state post-conviction court correctly determined that Petitioner failed to show that the erroneous oral instruction misled the jury (*id*. at 18).

 In Petitioner's response to Respondent's Answer, he admits that written instructions were provided to the jury, and those instructions correctly state the law regarding premeditation, but he contends that there is no evidence that the jury noticed the change in the written instructions (*see* Doc. 35 at 14).

A jury instruction does not merit federal habeas relief simply because it violates state law; rather, the instruction must "so infect[] the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973). Federal courts should inquire whether there was a "reasonable likelihood" that the jury applied the instruction in an unconstitutional manner. Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Id. at 72–73 (citing Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990)). The challenged instruction should be reviewed in the context of the instructions as a whole. Id. Other jury instructions and the trial process itself can serve to better explain to the jury its task such that the impact of the offending instruction is neutralized. See Francis v. Franklin, 471 U.S. 307, 315, 105 S. Ct. 1965, 1971, 85 L. Ed. 2d 344 (1985); Cupp, 414 U.S. at 146–47; Peek v. Kemp, 784 F.2d 1479, 1492 (11th Cir. 1986) (even in absence of instruction, jury could readily understand from penalty phase proceedings the function and purpose of mitigating evidence); Drake v. Francis, 727 F.2d 990 (11th Cir. 1984) (challenged part of jury instruction, which stated that a person of sound mind is presumed to intend the natural and probable consequences of his acts, was not unconstitutional when evaluated in light of the entire charge because the instructions included a clear statement that it was the state's responsibility to prove intent beyond a reasonable doubt, and there were numerous explicit references to the rebuttable nature of the presumptions, thus mitigating any untoward effect of the challenged part of instruction).

In the instant case, regardless of whether Petitioner fairly presented a federal claim to the state courts, the claim is without merit.[3]  Petitioner claims that the oral instruction negated his defense of lack of premeditation (see Doc. 35 at 13).  He argues that the instruction excluded a fundamental and necessary ingredient of law required to substantiate the crime of premeditated murder, that is, a conscious decision to kill (id.).  Petitioner further contends that as a result of the erroneous part of the instruction, the jury could have based its determination of guilt on the incorrect definition of premeditation (id.).

---

[3]Pursuant to 28 U.S.C. § 2254(b)(2), the court may deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust state court remedies.

The trial transcript shows that the challenged oral instruction was given in context with the following other instructions on premeditation:

> Killing with premeditation is killing without consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

> The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.

(Doc. 25, Ex. M at 352–53). There is no question that the trial court erroneously stated, "Killing with premeditation is killing <u>without</u> consciously deciding to do so," whereas the correct statement of Florida law is "Killing with premeditation is killing <u>after</u> consciously deciding to do so. *See* Florida Standard Jury Instructions in Criminal Cases, Part Two: Instructions on Crimes, Chapter 7.2 Murder—First Degree (2007) (instruction adopted in 1981 and amended in October of 1981 and July of 1997) (emphasis added). However, the challenged portion of the oral instruction was immediately followed by statements which correctly clarified the definition of premeditation as requiring that the decision to kill be present in the defendant's mind at the time of the killing, that he must have formed a premeditated intent to kill before the killing, and that there must be sufficient time between formation of the intent to kill and the killing to allow reflection by the defendant. Additionally, prior to the trial court's orally instructing the jury, each juror was provided a copy of the written instructions, which included the correct instruction on premeditation, "'Killing with premeditation' is killing after consciously deciding to do so," and the trial judge directed the jurors to read the instructions contemporaneously with his oral instructions (*see* Doc. 25, Ex. A(1) at 17, Ex. M at 350–51). Any reasonable person reading along as the judge spoke would have noticed that the judge simply misspoke when he stated "without consciously deciding to do so" instead of "after consciously deciding to do so." Furthermore, each juror was provided a copy of the correct written instructions to consult in the jury room during deliberations (*see id.* at 281, 368–69).

The undersigned concludes that a common sense evaluation of the jury instructions in this case indicates that no reasonable juror could have been misled or confused about the definition of

premeditation.  When read in context, the only reasonable interpretation of the instructions on premeditation is that a finding of premeditation requires a finding that Petitioner consciously decided to kill prior to the killing, which is a correct definition of premeditation.  Any misleading or confusing effect that the trial court's oral misstatement may have had was entirely vitiated by the correct written instructions, which the jury read contemporaneously with the oral instructions and had available to them during deliberations.  Therefore, there is no reasonable likelihood that the jury convicted Petitioner of premeditated murder without finding beyond a reasonable doubt that he consciously decided to kill the victim prior to the killing.  Because Petitioner has failed to establish that the challenged jury instruction "so infected the entire trial [with unfairness] that the resulting conviction violates due process," Cupp, 414 U.S. at 147, he is not entitled to federal habeas relief.

Accordingly, it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 6) be **DENIED**.

At Pensacola, Florida, this 29th day of February 2008.


/s/ *Elizabeth M. Timothy*　　　　　　　　　
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>


**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>United States v. Roberts,</u> **858 F.2d 698, 701 (11th Cir. 1988).**